OPINION
{¶ 1} Appellant Cathy May [hereinafter appellant] appeals from the August 17, 2005, Judgment Entry of the Stark County Court of Common Pleas, Family Court Division, which granted permanent custody of appellant's two sons, Tres and Aaron Peterson, to the Stark County Department of Job and Family Services [hereinafter agency].
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellant Cathy May is the biological mother of Tres Peterson (d.o.b. 11/6/95) and Aaron Peterson (d.o.b. 11/25/96). In January, 2003, Tres and Aaron were removed from appellant's home and placed in foster care. Years before, the two children had been placed in the legal custody of their alleged paternal grandmother, Elenore Peterson.[1] Ms. Peterson had allowed the children to move back in with their mother without any formal court action.
 {¶ 3} On January 24, 2003, the agency filed a complaint alleging dependency and neglect and seeking temporary custody of the children.[2] Ms. Peterson (the grandmother) was included as a party to the action along with her son, the children's putative father, Brian Peterson.[3] At that time, Mr. Peterson was in prison following a conviction for domestic violence committed against appellant.
 {¶ 4} On February 20, 2003, the agency moved to amend the complaint to delete the allegation of neglect. Ms. Peterson, the legal custodian, stipulated to dependency. By Judgment Entry filed February 24, 2003, the children were found to be dependent and temporary custody was granted to the agency.
 {¶ 5} On July 23, 2003, a case plan was approved and adopted. Essentially, appellant's and Mr. Peterson's case plan and its subsequent amendments included the following goals: 1) complete a psychological evaluation at Human Development and Counseling; 2) complete parenting skills at Goodwill Industries; 3) domestic violence counseling at Renew (appellant only); 4) abstain from drugs and alcohol; and 5) submit to a substance abuse evaluation at Quest Recovery Services. As to Mr. Peterson, he was to establish paternity.
 {¶ 6} On December 22, 2003, the agency filed a motion to extend temporary custody. On January 22, 2004, the trial court granted an extension of temporary custody to July 24, 2004.
 {¶ 7} On March 3, 2004, appellant filed a motion to change legal custody to appellant. A hearing on the motion was held on April 1, 2004. The motion was granted with the agency retaining protective supervision of the children. A corresponding Judgment Entry was filed on April 5, 2004.
 {¶ 8} Subsequently, the agency learned that Mr. Peterson was to be released from prison on or about June 2, 2004. After Mr. Peterson's release, the agency received information that Mr. Peterson was residing with appellant, despite the domestic violence Mr. Peterson committed against appellant and the expressed concerns of the agency. See Affidavit filed June 4, 2004.
 {¶ 9} On June 4, 2004, the agency filed a Motion for Immediate Review. In the motion, the agency sought a restraining order enjoining any party from allowing contact between the children and Brian Peterson. In addition, the agency requested that appellant be ordered to submit a urine sample for chemical analysis due to appellant's alleged admission of recent use of cocaine. Last, the agency sought to amend the case plan to mitigate the risk Mr. Peterson presented to the children. By separate motion, filed the same day, the agency sought an ex parte no contact order.
 {¶ 10} On June 4, 2004, an ex parte no contact order was issued as to Brian Peterson and the children. In addition, the trial court ordered that Mr. Peterson obtain a psychological evaluation and a Quest evaluation. A hearing on the motion for a restraining order was held on June 7, 2004. As a result, a no contact order was issued. In addition, the trial court amended the case plan to add that Mr. Peterson was to obtain a psychological examination and a Quest evaluation.
 {¶ 11} On June 14, 2004, the agency filed a motion to extend protective supervision.
 {¶ 12} A review hearing was held on June 15, 2004. Neither appellant nor Mr. Peterson appeared.
 {¶ 13} On July 23, 2004, the agency's motion to extend protective supervision came on for hearing. The trial court made the following findings at that hearing: "[Domestic violence] incidents continue. Mother has been abusing alcohol. Mother is moving, has new job, has not done Quest or Renew. Father made appointment at Melymbrosia [but] did not appear. Mother has difficulty handling children. Magistrate finds it to be in children's best interests to be removed from Mother's custody [and] placed in [temporary custody] of [agency]." Accordingly, the trial court ordered that the two children be picked up and placed in the agency's custody. The agency's motion for extension of protective supervision was continued for further hearing.
 {¶ 14} By Judgment Entry filed on October 5, 2004, the trial court extended the agency's temporary custody to January 23, 2005. Appellant stipulated to the extension.
 {¶ 15} A hearing was held on December 13, 2004. The trial court found that the children were in a foster home, appellant had completed parenting classes but relapsed by using cocaine and therefore, had restarted Quest. The trial court ordered that appellant initiate a paternity action as soon as possible.
 {¶ 16} On December 22, 2004, the agency filed a motion for permanent custody. On February 17, 2005, appellant filed a motion to dismiss the case, terminate the agency's involvement and return the children to the appellant's custody. Appellant argued that when the trial court granted legal custody to appellant on April 5, 2004, the case should have been closed. Therefore according to appellant, the proper procedure to remove the children from appellant's custody would have been to start a new case.
 {¶ 17} A hearing on the motion for permanent custody was held on August 2, 2005. The trial court addressed appellant's motion to dismiss at the beginning of the hearing. The trial court found the fact that the agency maintained protective supervision after appellant was granted legal custody was dispositive. The trial court concluded that because the agency maintained protective supervision, the case was preserved and had continued. Accordingly, the trial court denied appellant's motion.
 {¶ 18} After hearing evidence, the trial court found that appellant had failed to continuously and repeatedly remedy the conditions which had initially caused these children to be placed in foster care. The trial court concluded that appellant had demonstrated a lack of commitment towards these children in the past eight months. Further, the trial court felt that extending temporary custody of the children to allow the appellant and Mr. Peterson to work on their case plan was not in the childrens' best interest impliedly because it appears that appellant and Mr. Peterson would not be able to remedy the initial problems in the case anytime in the foreseeable future.
 {¶ 19} Accordingly, the trial court issued a Judgment Entry in which it granted permanent custody of the two children to the agency based upon findings that the children cannot be placed with either parent at this time or within a reasonable period of time, the children were abandoned by their father(s), the children have been in the temporary custody of the agency for more than 12 months within the last 22 months and it was in the best interest of the children for permanent custody to be granted to the agency.
 {¶ 20} It is from that Judgment Entry that appellant appeals, raising the following assignment of error:
 {¶ 21} "THE TRIAL COURT ERRED IN FAILING TO DISMISS THE MOTION FOR PERMANENT CUSTODY."
 {¶ 22} In appellant's sole assignment of error, appellant contends that the trial court erred when it denied her motion to dismiss. We disagree.
 {¶ 23} In the motion to dismiss, appellant contended that the trial court did not have jurisdiction since the change of legal custody on April 1, 2004, reflected in the April 5, 2004, Judgment Entry. Appellant contended that the change of legal custody, granting legal custody to appellant, extinguished the case by operation of law. Appellant argued that in order to act, the agency was required to file a new action, under a new case number.
 {¶ 24} The authority for appellant's March 3, 2004, motion for a change of legal custody was R.C. 2151.415(F).[4]
Following a hearing, the trial court gave custody of the children to appellant with protective supervision by the agency. Revised Code 2151.417(A) allows a trial court to review at any time orders issued pursuant to R.C. 2151.415 and allows a trial court to consider the appropriateness of a child's placement or custody arrangement. The trial court had continuing jurisdiction to act pursuant to R.C. 2151.353(E)(1) which states the following, in relevant part: "The court shall retain jurisdiction over any child for whom the court issues an order of disposition pursuant to division (A) of this section or pursuant to section 2151.414
or 2151.415 of the Revised Code until the child attains the age of eighteen years if the child is not mentally retarded, developmentally disabled, or physically impaired. . . ." Further, R.C. 2151.353(E)(2) states that a trial court may modify or terminate any prior dispositional order issued pursuant to R.C.2151.415.[5]
 {¶ 25} In this case, the trial court had jurisdiction to modify or amend its prior disposition. When the trial court returned the children to appellant, the trial court specifically ordered that the agency maintain protective supervision. As such, the trial court had jurisdiction to proceed in the same case, under the same case number when the agency asserted that the children needed to be removed from appellant's home based upon matters observed while the children remained under the agency's protective supervision.
 {¶ 26} For the foregoing reasons, appellant's sole assignment of error is overruled.
 {¶ 27} The judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed.
Edwards, J. Hoffman, P.J. and Boggins, J. concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed. Costs assessed to appellant.
[1] Stark County Juvenile Court Case No. JU103020.
[2] The Complaint alleged as follows:
"The SCDJFS has extensive prior history with this family including JU 103020, in which legal custody of both Tres' [sic] and Aaron was granted to the paternal grandmother, Elenore Peterson. Concerns in that case included substance abuse, domestic violence and improper supervision. At the time of that filing in June of 1998, Tres' [sic] and Aaron, then 2 years old and 18 months old, were found home alone at 2:00 a.m. The parents failed to comply with case plan objectives and custody was granted to the paternal grandmother in May of 1999. The SCDJFS' involvement was terminated at that time.
"SCDJFS received a referral on January 23, 2003, that Mother had been picked up on warrants and that the children had been residing with her since shortly after the change of legal custody occurred. The SCDJFS was also advised that the children were home alone.
"Mother's neighbor reported that Mother had called him at approximately 3:00 a.m. on January 23, 2003, and asked him to go to the jail, get the key from her, and watch the boys. The neighbor told SCDJFS that he did as Mother had asked, but that he could not provide for the boys on a long term basis. The neighbor further reported to SCDJFS that Mother had asked him to watch the boys earlier in the day so that she could go out drinking and he had refused. The neighbor further stated to the SCDJFS worker that Mother drinks on a daily basis and that she [becomes extremely] belligerent when drinking.
"The children reported to the SCDJFS worker that their mother is "sick because she drinks and smokes too much." The children further reported that Mother had been drinking the night before. The children told the SCDJFS worker that "if they wake up and Mother is not there, we go to the neighbors."
"Paternal grandmother stated to case worker that she no longer wants custody of the boys. She stated that she cannot take them back because she has no room in her home due to other family members residing there. Mother's neighbor reported to the SCDJFS worker that both the maternal and paternal grandmother refused to come and get the boys from his residence.
"Alleged father is currently incarcerated. Alleged father has a history of domestic violence and alcohol and/or substance abuse. Mother has an extensive criminal history including theft, criminal damaging or endangering, disorderly conduct by intoxication, passing bad checks, receiving stolen property and forgery.
"The SCDJFS was unable to locate any appropriate relatives to take placement of the children. Both children were taken into custody pursuant to Juvenile Rule 6 by the Massillon Police Department.
"The SCDJFS has subsequently become aware of the fact that Mother did not spend the night in jail. However, court personnel reported to case worker that Mother stopped an officer at approximately 3:00 a.m. and made statements about looking for crack."
[3] Brian Peterson has appealed the grant of permanent custody also. See Stark App. No. 2005CA00249.
[4] "The court, on its own motion or the motion of the agency or person with legal custody of the child, the child's guardian ad litem, or any other party to the action, may conduct a hearing with notice to all parties to determine whether any order issued pursuant to this section should be modified or terminated or whether any other dispositional order set forth in divisions (A)(1) to (5) of this section should be issued. After the hearing and consideration of all the evidence presented, the court, in accordance with the best interest of the child, may modify or terminate any order issued pursuant to this section or issue any dispositional order set forth in divisions (A)(1) to (5) of this section. In rendering a decision under this division, the court shall comply with section 2151.42 of the Revised Code." R.C.2151.415(F).
[5] R.C. 2151.353(E)(2) states as follows: "Any public children services agency, any private child placing agency, the department of job and family services, or any party, other than any parent whose parental rights with respect to the child have been terminated pursuant to an order issued under division (A)(4) of this section, by filing a motion with the court, may at any time request the court to modify or terminate any order of disposition issued pursuant to division (A) of this section or section2151.414 or 2151.415 of the Revised Code. The court shall hold a hearing upon the motion as if the hearing were the original dispositional hearing and shall give all parties to the action and the guardian ad litem notice of the hearing pursuant to the Juvenile Rules. If applicable, the court shall comply with section 2151.42 of the Revised Code."